APPEAL OF READY AUTO SUPPLY CO.

Docket No. 3539.     Submitted July 17, 1925.     Decided September 30, 1925.

Promissory notes executed by the owners of all of the common stock of a corporation and by them paid in to it in satisfaction of a duly authorized assessment upon such stock, upon which no cash payments ever were made, and which were not discounted by the corporation but were canceled at maturity, the amount of each note being charged to the personal account of the maker, *held*, in the light of the evidence concerning the financial standing of the makers, not to have been *bona fide* paid in, either for the stock or on account of an assessment constituting a paid-in surplus. *Appeal of Hewitt Rubber Co.*, 1 B. T. A. 424, distinguished.

*Albert L. Clothier, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before JAMES, SMITH, and LANSDON.

FINDINGS OF FACT.

The taxpayer is a New Jersey corporation with its principal office in Brooklyn, N. Y.

During the period June 21, 1916, to September 30, 1917, the Ready Auto Supply Co., a partnership, was engaged in the business of selling automobile accessories. This partnership was owned by L. C. Heller and M. I. Steinhardt.

The net income of the partnership for the period June 21, 1916, to December 31, 1916, amounted to $2,439.97, and for the period January 1, 1917, to September 30, 1917, amounted to $4,163.66.

The taxpayer was incorporated September 15, 1917, and took over the business and assets, including good will, of the partnership as of September 30, 1917.

Stock in the amount of $35,500 was issued on November 12, 1917, in exchange for the assets of the partnership. The certificates of stock were issued as follows:

| | Common | Preferred |
|---|---|---|
| Ludwig C. Heller | 138 | 18 |
| Mortimer I. Steinhardt | 68 | 18 |
| Alan H. Heller | 4 | 9 |
| Louis Steinhardt | | 80 |
| Fanny Heller | | 15 |
| I. N. Heller | | 5 |
| Total | 210 | 145 |

The assets of the partnership as of September 30, 1917, were as follows:

| | |
|---|---|
| Cash | $571.88 |
| Accounts receivable, merchandise | 9,506.40 |
| Accounts receivable, personal | 556.80 |
| Notes receivable | 196.37 |
| Automobiles | 357.18 |
| Furniture and fixtures | 1,765.93 |
| Inventory—accessories | 17,285.76 |
| Tires and tubes | 6,401.02 |
| Unexpired insurance | 101.87 |
| Total assets | 36,743.21 |
| Accounts payable, merchandise | 11,732.59 |
| Notes payable | 2,500.00 |
| Interest payable | 46.00 |
| Depreciation reserve: | |
|     Furniture and fixtures ___ $1,243.11 | |
|     Automobile ___ 117.88 | |
| | 1,360.99 |
| Capital paid in by partners and members of partners' families | 14,500.00 |
| Surplus | 6,603.63 |
| Total liabilities | 36,743.21 |

Preferred stock in the amount of $14,500 was issued to the members·of the partnership and members of their families who had loaned money to the partners. This stock was issued in the same proportion as the capital advance.

Common stock in the amount of $20,600 was issued to L. C. Heller and M. I. Steinhardt. The common stock of $400 issued to Alan H. Heller was owned in equal amount by L. C. Heller and M. I. Steinhardt, so that these individuals held the beneficial title to 140 and 70 shares, respectively.

The proportion 2 to 1 was orally agreed upon as the amount of their respective interests in the partnership business and was used as the basis for the division and issue of the common stock.

·At the time of the first directors' meeting, November 12, 1917, the directors authorized an assessment of 100 per cent upon the common stock.

This assessment was effected as of January 1, 1919, at which time notes in the total amount of $12,000, executed by L. C. Heller, and $7,000, executed by M. I. Steinhardt, were paid in to the corporation.

A credit of $2,000 was made in the personal account of L. C. Heller on December 31, 1918. This item represented salary for the year 1918 and was treated as in payment of $2,000 of common stock.

On August 1, 1919, I. N. Heller purchased the 70 shares of common stock from M. I. Steinhardt, paying $6,000 therefor and assuming the obligation of $7,000 in notes due the corporation by M. I. Steinhardt and the interest accrued on this amount for the period January 1 to August 1, 1919. I. N. Heller on August 1, 1919, executed notes in the amount of $7,000. The notes executed by M. I. Steinhardt were canceled and regarded as paid.

The notes executed by L. C. Heller and paid in to the corporation were as follows:

| Date. | Amount. | Payable. | Interest. | Date. | Amount. | Payable. | Interest. |
|---|---|---|---|---|---|---|---|
| | | | Per cent. | | | | Per cent. |
| Jan. 1, 1919 | $1,000 | Apr. 30, 1919 | 6 | Jan. 1, 1919 | $1,000 | Aug. 30, 1921 | 6 |
| Do | 1,000 | Aug. 30, 1919 | 6 | Do | 1,000 | Dec. 31, 1921 | 6 |
| Do | 1,000 | Dec. 31, 1919 | 6 | Do | 1,000 | Apr. 30, 1922 | 6 |
| Do | 1,000 | Apr. 30, 1920 | 6 | Do | 1,000 | Aug. 30, 1922 | 6 |
| Do | 1,000 | Aug. 30, 1920 | 6 | Do | 1,000 | Dec. 31, 1922 | 6 |
| Do | 1,000 | Dec. 31, 1920 | 6 | | | | |
| Do | 1,000 | Apr. 30, 1921 | 6 | Total | 12,000 | | |

The notes executed by I. N. Heller and paid in to the corporation were as follows:

| Date. | Amount. | Payable. | Interest. | Date. | Amount | Payable. | Interest |
|---|---|---|---|---|---|---|---|
| | | | *Per cent* | | | | *Per cent* |
| Aug. 1, 1919 | $1,000 | Oct. 31, 1919 | 6 | Aug. 1, 1919 | $1,000 | Apr. 30, 1921 | 6 |
| Do | 1,000 | Dec. 31, 1919 | 6 | Do | 1,000 | Aug. 31, 1921 | 6 |
| Do | 1,000 | Apr. 30, 1920 | 6 | | | | |
| Do | 1,000 | Aug. 31, 1920 | 6 | Total | 7,000 | | |
| Do | 1,000 | Dec. 31, 1920 | 6 | | | | |

During the years 1919, 1920, 1921, and 1922 the notes due for these years were charged to the personal accounts of L. C. Heller and I. N. Heller, and any unpaid salary outstanding at the close of the year was credited in these accounts.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The taxpayer relies upon the *Appeal of Hewitt Rubber Co.*, 1 B. T. A. 424, in its claim for invested capital on account of notes alleged to have been paid in as an assessment upon the common stock of the taxpayer and virtually in payment thereof. The facts in the *Appeal of Hewitt Rubber Co.*, *supra*, were that Hewitt actually delivered his note for $1,000,000 for $1,000,000 par value of the stock of the company; that within a year the entire $1,000,000 was paid as the requirements of the corporation for funds dictated and that at all times Hewitt was fully able to meet an instant demand upon him for the entire amount of the notes. These facts were stressed in the opinion as indicating the complete *bona fides* of the transaction both from the standpoint of the actual payment in of property and from the standpoint of placing a real and valuable asset in the hands of the corporation for its use.

The testimony of L. C. Heller, offered as a witness on behalf of the taxpayer, presents quite a different picture in this appeal. After direct and cross examination the following examination took place on the part of the Board:

Mr. LANSDON: Was any use ever made of these notes? Did you just take them in on this assessment and put them in your safe, or what did you do with them while they were in the possession of your company? You are setting up a claim here that they should be included in your invested capital. Invested capital is something that is used in the prosecution of the business.

The WITNESS: Yes, sir.

Mr. LANSDON: Were these notes used in any way?

The WITNESS: No, sir, they were not used, for the simple reason that at that time it was not necessary to discount them or make use of them until the due dates.

Mr. LANSDON: They never were paid; that is, no cash payments were ever made on them. When they fell due they were simply cancelled and the amount

of each note was charged then to the book account of the person who gave the note, as I understand it.

The WITNESS: Yes, sir.

Mr. LANSDON: Let me ask you a question. I want to know what these credits were charged against. You say they were charged against the personal accounts of the persons who had given the notes. They resulted at the end of the period in what kind of a balance as to these personal accounts? After the notes were cancelled and charged to the personal account, the individual then owed on the personal account what he had theretofore owed on notes, did he?

The WITNESS: He had paid the interest.

Mr. LANSDON: I suppose he paid interest on the notes, and was he not charged interest on the personal account after the note was transferred to the personal account?

The WITNESS: Yes, sir.

Mr. LANSDON: The personal accounts have never been paid, they are still on the books, are they?

The WITNESS: The personal accounts are still on the books, yes, sir.

Considerable testimony was taken as to the financial standing of the parties who were the makers of the notes in question. The testimony so given only strengthens the general impression that the notes were not given in good faith in payment either of the stock or of an assessment constituting a paid-in surplus. The Board is not disposed to extend what it believes to be the sound rule indicated in the *Appeal of Hewitt Rubber Co.*, *supra*, to cases generally involving indebtedness of stockholders to corporations on account of their stock. Only transactions clearly evidencing good faith may be so recognized.

ARUNDELL not participating.